[J-62-2025] [MO: Donohue, J.]

# IN THE SUPREME COURT OF PENNSYLVANIA
## EASTERN DISTRICT

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 62 EAP 2024 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court at No. 62 EDA |
| | : | 2023 entered on February 16, |
| v. | : | 2024, affirming the Order of the |
| | : | Philadelphia County Court of |
| | : | Common Pleas at No. MC-51-CR- |
| QUADIR STEADLY, | : | 0016266-2021, entered on |
| | : | November 28, 2022. |
| Appellant | : | |
| | : | ARGUED:  September 9, 2025 |

## CONCURRING OPINION

**JUSTICE DOUGHERTY**                                    **DECIDED: July 21, 2026**

I join the majority opinion.  As the majority aptly develops, a conviction for resisting arrest must be sustained by an underlying lawful arrest.  Where, as here, the underlying arrest is based solely on warrants, those warrants must be valid.  The Commonwealth in this case did not carry its burden to prove beyond a reasonable doubt that the bench warrants for Quadir Steadly were valid when Officer Corey Moore attempted to arrest him and Steadly resisted.  I write separately to emphasize the narrowness of the majority's holding and suggest how the Commonwealth may carry its burden of proof in future cases.

Steadly was pulled over for a traffic violation and gave identifying information to Officer Moore.  Steadly was arrested when Officer Moore learned he had outstanding bench warrants, and he physically resisted the arrest.  When Officer Moore testified at trial regarding the stop and arrest, the trial court sustained Steadly's best evidence

objection to the officer's testimony that he saw two bench warrants in Steadly's name on his Mobile Data Terminal in his police vehicle. Officer Moore went on to testify, without objection, that he confirmed with dispatch the existence of the warrants. Thus, the only evidence regarding the warrants admitted at trial was Officer Moore's testimony that he "went over the air with name, date of birth, . . . spelling, and . . . police radio did state that this individual was wanted for bench warrants." N.T. Trial, 4/1/22, at 14. Ultimately, the trial court found Steadly guilty of resisting arrest. As the majority correctly holds, the evidence of Officer Moore's communication with police dispatch showed "the bench warrants existed[,]" but it was not sufficient "to show that the warrants were valid." Majority Opinion at 36.

Importantly, while holding the present evidence insufficient, the majority does not specify what evidence **is** required to prove validity. *See id.* at 37 ("We do not address today what the Commonwealth must specifically prove to establish the validity of a warrant."); *id.* at 37 n.37 ("Only in future cases — wherein some evidence of validity is proffered — will we be able to provide further guidance as to what sufficient evidence of a warrant's validity looks like."). In particular, the majority does not hold the Commonwealth must produce the actual physical warrant in order to establish its validity, which, due to lack of retention, misfiling, origination in a foreign jurisdiction, or other factors, could prove impossible, or effectively so, as a practical matter. Although the majority at one point observes that "[n]o explanation has ever been provided as to why the Commonwealth was unwilling or unable to produce the warrants at Steadly's trial[,]" it never holds or intimates that the physical warrants were necessary to sustain the Commonwealth's burden of proof. *Id.* at 35 n.35. Indeed, as Steadly himself emphasizes, "[t]here are a variety of ways in which the Commonwealth might establish the existence of a valid warrant" apart from presenting the warrant itself:

In some circumstances, an officer may have personal knowledge . . . of a bench warrant that would be sufficient to establish its validity in court. For example, an officer called to court for a case may observe that a bench warrant is issued when the defendant in that case fails to appear. If that officer were to encounter the defendant soon after, the officer's personal knowledge might be sufficient to establish that a valid bench warrant exists. Alternately, the court records might contain sufficient information to supplement an entry in the court computer establishing that a valid bench warrant existed, though the document itself is not produced. Similarly, information in an NCIC[1] report — properly admitted — may contain sufficient information to support the existence of probable cause in an arrest warrant that is not produced at trial. Or, the officer who submitted the affidavit of probable cause for the warrant could be called to testify . . . . The arresting officer could then testify she was told of the warrant's existence and placed the defendant under arrest. . . . Or, maybe the parties all agree that a valid warrant existed, and the Commonwealth simply chooses to seek a stipulation.

Steadly's Reply Brief at 14-16 (footnote and citation omitted). The actual warrant may not necessarily be better evidence of validity than one of these alternatives. As the Commonwealth explains, a warrant is "simply a paper order signed by a judge" and is "not a live document that is updated" on its face to reflect any changes in its ongoing status, such as expiration or rescission. Commonwealth's Brief at 18.

Thus, the majority's opinion does not create a specific or insuperable burden for the Commonwealth. The prosecution merely must adduce proof of the warrant's validity, whether that be production of the warrant itself, testimony from an officer present when the warrant issued, testimony from the warrant's affiant, court records, an NCIC report, a stipulation, or other evidence for the court to examine and weigh as it would evidence of any element of an offense. The Commonwealth in this particular case did not avail itself of any of these options and as such the evidence was insufficient. But prosecutions going

---

[1] NCIC is the acronym for the National Crime Information Center system, which "is an electronic clearinghouse of criminal data that can be accessed by most criminal justice agencies nationwide, to assist in the apprehension of fugitives, locate missing persons, recover stolen property, and identify terrorists." *Commonwealth v. Williams*, 331 A.3d 556, 563 n.3 (Pa. 2025), *quoting Commonwealth v. Santiago*, 209 A.3d 912, 915 n.3 (Pa. 2019).

forward may avoid this same fate, provided they introduce evidence, from whatever source, of the validity of the underlying warrant. Today's limited decision demands nothing more.

Justice McCaffery joins this concurring opinion.